UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY,<br><br>    Defendant. | Civil Action No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff **ARCH INSURANCE COMPANY** by its attorneys, **CONNELL FOLEY LLP**, as and for its Complaint, alleges, upon information and belief, as follows:

## INTRODUCTION

1. ARCH INSURANCE COMPANY ("Arch" or "Plaintiff") brings this action against SCOTTSDALE INSURANCE COMPANY ("Scottsdale" or "Defendant") for breach of contract and declaratory judgment under CPLR § 3001 arising from Defendant's improper failure and refusal to provide for the State of New York's (the "State") defense and potential indemnity with respect to the following nine (9) underlying New York State Court of Claims actions against the State:

- *Rhonda Sommer (on behalf of deceased Helen Adelson) and Monica Reiner (on behalf of deceased Isadore Adelson) v. State of New York*, Claim No. E18-833;

- *Winiffer Garcia v. State of New York*, Claim No. 130480;

- *Stacy Martella (as Administratrix of deceased Scott Martella) v. State of New York*, Claim No. 130134;

- *Nassau County Public Administrator (as Administrator of the Estate of Christopher Pinales Figuereo) v. State of New York*, Claim No. 131637;

- *Alejandra Mendez Pinales (as Administrator of the Estate of Christopher Carmelo Pinales) v. State of New York*, Claim No. 131837;

1

- *Nelson Ramirez (as Administrator of the Goods, Chattels and Credits of Patricia Pinales) v. State of New York*, Claim No. 131101;

- *Nelson Ramirez on behalf of infant A.R. v. State of New York*, Claim No. 130710;

- *Marvin I. Tenzer and Sandra Tenzer v. State of New York*, Claim No. 130053; and

- *Shelbi Thurau v. State of New York*, Claim No. 130435.

(collectively, "Underlying Court of Claims Actions").

2. Arch further brings this action seeking an order that Scottsdale is obligated to provide defense and indemnity to the State because its named insured H&L CONTRACTING LLC ("H&L") has procured additional insurance, and has an insured contractual obligation to defend, indemnify and hold the State harmless, in connection with the Underlying Court of Claims Actions pursuant to an October 8, 2014 written agreement between H&L and the State, acting by and through the New York State Department of Transportation ("DOT").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over the defendants because they are engaged in the insurance business and licensed to issue insurance policies in New York. Venue is proper in this District is proper, pursuant to 28 U.S.C. §1391(b)(1) because, Scottsdale maintains offices and conducts business in this District.

## PARTIES

5. Arch is and was, at all relevant times, an insurance company organized and existing under the laws of the State of Missouri, having its principal place of business in the State of New Jersey.

6. Arch is and was, at all relevant times, authorized to issue insurance policies in the State of New York.

7. Scottsdale is and was, at all relevant times, an insurance company organized and existing under the laws of the State of Arizona, having its principal place of business in the State of Arizona.

8. Scottsdale is and was, at all relevant times, licensed and/or authorized to issue insurance policies in the State of New York.

9. Scottsdale, at all relevant times, maintained an office in the City of New York, State of New York.

10. Scottsdale, at all relevant times, either directly or through an agent, transacted business within the City of New York, State of New York and/or contracted outside the State to offer goods or services within the City of New York, State of New York.

## THE UNDERLYING COURT OF CLAIMS ACTIONS

11. The Underlying Court of Claims Actions each arise out of an August 21, 2016 multi-car accident that occurred on the Long Island Expressway, between exits 68 and 69, resulting in several fatalities, as well as a number of bodily injuries (the "Accident").

12. The Accident is alleged to have occurred as a result of, among other things, the installation of a metal plate and asphalt edges in the roadway as part of a bridge repair project.

13. The State retained H&L to serve as the general contractor in connection with various preventative maintenance bridge repairs in the towns of Brookhaven and Islip, New York by way of Contract Number D262659 dated October 8, 2014 (the "Contract"). A true and accurate copy of the Contract is attached hereto at **Exhibit A**.

14. In the Contract, H&L agreed to procure and maintain insurance on behalf of the State, including general liability insurance and protective liability insurance.

15. The Accident generated the nine (9) lawsuits constituting the Underlying Court of Claims Actions against the State in the New York Court of Claims, all of which allege that the Accident occurred, at least in part, due to negligence in the performance of, and inspection of, certain construction work at the site of the Accident.

16. Upon information and belief, H&L's work under the Contract was ongoing at the time of the Accident.

17. Arch is defending the State in connection with the Underlying Court of Claims Actions.

18. Scottsdale is obligated to defend and indemnify the State in connection with the Underlying Court of Claims Actions pursuant to insurance policies it issued to H&L and the Contract, as set forth below.

## THE CONTRACT

19. The State and H&L entered into the Contract on or about October 8, 2014.

20. As referenced above, the State retained H&L to serve as the general contractor in connection with various preventative maintenance bridge repairs in the towns of Brookhaven and Islip, New York in accordance with the terms and provisions contained in the Contract, which is inclusive of the DOT Standard Specifications (the "Standard Specifications"). A true and accurate

copy of the relevant portions of the Standard Specifications as of September 4, 2014 is attached hereto at **Exhibit B**.

21.   Specifically, the Contract required H&L to "furnish all materials, appliances, tools and labor of every kind required, and construct and complete in the most substantial and skillful manner, the construction, improvement or reconstruction of the project" as shown and identified in the project plan documents.

22.   The Standard Specifications required H&L, as the Contractor, to procure and maintain commercial general liability insurance with limits of liability of not less than $1 million per occurrence and not less than $2 million in the aggregate, and umbrella or excess liability insurance with limits of not less than $5 million per occurrence, as set forth at Section 107-06(B)(2) of the Standard Specifications. *See* **Exhibit B**.

23.   The Standard Specifications required H&L to obtain additional insured endorsements to their commercial general liability insurance and excess umbrella policies that names the State as additional insured, as set forth at Section 107-06(A)(4) of the Standard Specifications. *See* **Exhibit B**.

24.   In particular, pursuant to Section 107-06(A)(4) of the Standard Specifications, H&L agreed to obtain additional insured coverage for the State to respond to "any claim arising from" H&L's work under the Contract. *See* **Exhibit B**.

25.   The Standard Specifications required H&L to procure commercial general liability and excess umbrella liability insurance policies which provide primary noncontributory coverage over other insurance available to the State, as set forth at Section 107-06(A)(5) of the Standard Specifications. *See* **Exhibit B**.

26. The Standard Specifications required H&L to defend, indemnify, and hold the State harmless with regard to any lawsuits initiated against the State arising from the work under the Contract, as set forth at Section 107-09(C) of the Standard Specifications. *See* **Exhibit B**.

27. In particular, pursuant to Section 107-09(C) of the Standard Specifications, H&L agreed to defend, indemnify and hold the State harmless in connection with any claim "arising from" H&L's work under the Contract

28. The Standard Specifications assigned sole and continuous responsibility for the work site under the Contract to H&L from the time the Contract was awarded until final acceptance of the work under the Contract, as set forth at Section 107-09(D) of the Standard Specifications. *See* **Exhibit B**.

29. The Managing Partner of H&L signed the Contract on behalf of H&L.

## THE INSURANCE POLICIES

### I. The Arch Policy

30. Arch issued to the State an owners and contractors protective liability policy numbered 99COP0583200 and in effect September 18, 2014 to September 18, 2016 (the "Arch Policy"). A true and accurate copy of the Arch Policy is attached hereto at **Exhibit C**.

31. Arch is providing a defense to the State under the Arch Policy in connection with the Underlying Court of Claims Actions.

32. Notably, the Arch Policy includes the following other insurance provision:

> *8. Other Insurance. The insurance afforded by this policy is primary insurance and we will not seek contribution from any other insurance available to you except if the other insurance is provided by a contractor other than the designated "contractor" for the same operation and job location designated in the Declarations.*
>
> *If the other insurance is available, we will share with that other insurance by the method described below.*

> *If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.*
>
> *If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.*

33. Procurement of the Arch Policy does not negate H&L's defense and indemnity obligations to the State or Scottsdale's coverage of those obligations.

34. The coverage provided to the State by the Arch Policy is excess to the coverage provided to the State by the Scottsdale policies at issue, which are described below.

## II. The Scottsdale Policies

35. Scottsdale issued to H&L a commercial general liability policy numbered NCS0000588 and in effect March 25, 2015 to September 25, 2016, which includes the date of the Accident (the "Scottsdale CGL Policy"). A true and accurate copy of the Scottsdale CGL Policy is attached hereto as **Exhibit D**.

36. The Scottsdale CGL Policy limits liability to $2 million per occurrence and $4 million in the aggregate.

37. Scottsdale also issued to H&L a commercial excess liability policy numbered NXS0001806 and in effect March 25, 2015 to September 25, 2016, which includes the date of the Accident (the "Scottsdale Excess Policy"). A true and accurate copy of the Scottsdale Excess Policy is attached hereto as **Exhibit E**.

38. The Scottsdale Excess Policy limits liability to $3 million per occurrence and in the aggregate.

39. The Scottsdale CGL Policy and the Scottsdale Excess Policy (together, the "Scottsdale Policies") each define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

40. The Scottsdale Policies each define an "occurrence" as "an accident including continuous or repeated exposure to substantially the same general harmful conditions."

41. The Scottsdale CGL Policy includes an additional insured endorsement under form CG 20 33 04 13 and entitled "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement with You." The endorsement amends the insuring agreement to include as an additional insured "any person or organization for whom [H&L is] performing operations when [H&L] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [H&L's] policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury'… caused in whole or in part by [H&L's] acts or omissions or the acts or omissions of those acting on [H&L's] behalf."

42. The Scottsdale CGL Policy includes a completed operations additional insured endorsement under form CG 20 37 04 13 and entitled "Additional Insured – Owners, Lessees or Contractors – Completed Operations." The endorsement amends the insuring agreement to include as an additional insured "any person or organization when [H&L] and such person or organization have agreed in writing in a contract or agreement, executed prior to the 'occurrence' to which this insurance applies, that such person organization be added as an additional insured on [H&L's] policy…" "but only with respect to liability for 'bodily injury' … caused in whole or in part by 'your work' at [all locations] performed for that additional insured and included in the 'products-completed operations hazard.'"

43. At section I(1)(d), the insuring agreement within the Scottsdale Excess Policy provides:

> *Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this insurance. If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "controlling underlying insurance." Additional insured coverage provided by this insurance will not be broader than coverage provided by the "controlling underlying insurance."*

44. The Schedule of Controlling Underlying Insurance in the Scottsdale Excess Policy expressly includes the Scottsdale CGL Policy.

45. The Scottsdale CGL Policy includes a primary and noncontributory endorsement that supersedes the Other Insurance Condition set forth in the insuring agreement. The endorsement modifies the insuring agreement to render the coverage provided by the Scottsdale CGL Policy as primary and noncontributory as to any other insurance available to an additional insured under the Scottsdale CGL Policy subject to the following two conditions: (1) the additional insured is a Named Insured under such other insurance; and (2) H&L agreed in writing in a contract or agreement that the Scottsdale CGL Policy would be primary and would not seek contribution from any other insurance available to the additional insured (together, the "PNC Conditions").

46. In connection with the PNC Conditions, the State is a Named Insured under the Arch Policy.

47. In connection with the PNC Conditions, H&L agreed in writing in the Contract that commercial general liability insurance coverage extended to the State as an additional insured would be primary and noncontributory before any other insurance available to the State (as it is a contractual additional insured under the Scottsdale CGL Policy).

9

48.     Thus, the PNC Conditions are satisfied with respect to the State as an additional insured under the Scottsdale CGL Policy for whom H&L agreed in the Contract to afford primary noncontributory additional insured commercial general and excess liability coverage.

49.     As the Scottsdale Excess Policy provides that, *"Any additional insured under any policy of "controlling underlying insurance" will automatically be an additional insured under this insurance",* the State is also an additional insured under the Scottsdale Excess Policy in the same primary and noncontributory manner regarding other insurance in the Scottsdale CGL Policy.

50.     The Scottsdale Excess Policy also provides coverage for H&L's contractual defense and indemnity obligations to the State.

51.     Accordingly, the State is entitled to primary and noncontributory coverage as a contractual indemnitee and/or additional insured under the Scottsdale Policies in connection with the Underlying Court of Claims Actions.

### III.    Scottsdale's Refusal to Provide Coverage to the State

52.     On August 30, 2016, within days of the Accident, the State tendered the Underlying Court of Claims Actions to Scottsdale as contractual indemnitee and additional insured for defense and indemnification.

53.     On or around October 21, 2016, Scottsdale, through counsel, disclaimed coverage under a reservation of rights pending further investigation of the Accident.

54.     In subsequent correspondence, Scottsdale acknowledged that the State qualifies for additional insured coverage under the Scottsdale Policies.

55.     By way of limited example, a true and accurate copy of a November 6, 2017 coverage position letter by Scottsdale is attached hereto at **Exhibit F**.

10

56. Specifically, Scottsdale stated: "Based on Section 4. Additional Insureds of EI 09-021, we acknowledge that the State was contractually required to be named as an additional insured. As the agreement was executed prior to the date of the accident, the State is, therefore, afforded the additional insured status under the [Scottsdale Policies]."

57. Scottsdale has repeatedly conceded that the State is an additional insured under the Scottsdale Policies. By way of example, a true and accurate copy of a November 28, 2017 letter from Scottsdale to the State is attached hereto at **Exhibit G**.

58. However, Scottsdale denies that coverage is currently available to the State on the alleged basis that the Arch Policy is primary to the Scottsdale Policies.

59. This position is contrary to the plain language of the Arch Policy, the Scottsdale Policies, the Contract, and prevailing New York law.

60. Scottsdale maintains that the State qualifies as an additional insured under the Scottsdale Policies but must allegedly exhaust any and all coverage under the Arch Policy before coverage under the Scottsdale Policies may be triggered.

61. This position is also contrary to prevailing New York law, which holds that priority of insurance coverage is irrelevant where a contractual indemnification clause shifts an entire loss to a particular party, even in the face of an "other insurance" clause in another policy.

### The Underlying New York Supreme Court Actions

62. There are also a number of parallel actions arising from the Accident against H&L, as either a named defendant or third-party defendant, pending in New York State Supreme Court, including without limitation:

- *Winiffer Garcia v. Ivonne M. Luque, The Estate of Carmelo Pinales, deceased, and H&L Contracting, LLC*, Index No. 615683/2018;

- *Winiffer Garcia v. Max-Tec Construction Corp., et al.*, Index No. 615877/2019;

11

- *Rhonda Sommer, et al. v. Ivonne M. Luque, et al.*, Index No. 003888/2018;

- *Rhonda Sommer, et al. v. AECOM USA, Inc., et al.*, Index No. 616391/2019;

- *Stacy Martella, et al. v. Ivonne M. Luque, et al.*, Index No. 616164/2017;

- *Nassau County Public Administrator, as administrator of the Estate of Cristopher Pinales Figuereo, Deceased v. Ivonne M. Luque, et al.*, Index No. 613248/2018;

- *Alejandra Mendez Pinales, as Administrator of the Estate of Carmelo Pinales v. H&L Contracting, LLC*, Index No. 615268/2018;

- *Nelson Ramirez, as Administrator of the Goods, Chattels and Credits which were of Patricia Pinales, Deceased v. Ivonne M. Luque, et al.*, Index No. 604526/2018;

- *Nelson Ramirez, as Administrator of the Goods, Chattels and Credits which were of Patricia Pinales, Deceased v. Max-Tec Construction Corp., et al.*, Index No. 615205/2019;

- *A.R., an infant, by her father and natural guardian Nelson Ramirez, and Nelson Ramirez, individually v. Ivonne M. Luque, et al.*, Index No. 006204/2018;

- *A.R., an infant, et al. v. Max-Tec Construction Corp., et al.*, Index No. 615202/2019;

- *Marvin L. Tenzer, et al. v. H&L Contracting, LLC*, Index No. 614240/2017;

- *Marvin L. Tenzer, et al. v. AECOM USA, Inc., et al.*, Index No. 615506/2019; and

- *Shelbi Thurau v. Ivonne M. Luque, et al.*, Index No. 620340/2017.

(collectively, "Supreme Court Actions").

63. H&L is either a named defendant or a third-party defendant in the Supreme Court Actions and, in varying degrees of specificity, it is alleged in the Supreme Court Actions that the Accident was caused, at least in part, by H&L's negligent work under the Contract with regard to the installation of temporary road plates at the site of the Accident.

64. The Supreme Court Actions contain allegations that the Accident arose out of H&L's work under the Contract, which allegations trigger H&L's obligation to defend the State under Section 107-09(C) of the Standard Specifications.

65. Scottsdale also insures H&L's obligations to defend and/or indemnify the State.

66. Upon information and belief, H&L's work under the Contract at the site of the Accident was ongoing at the time of the Accident.

67. Upon information and belief, the Supreme Court Actions were consolidated with the Underlying Court of Claims Actions for discovery purposes.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Relief – Duty to Defend)

68. Plaintiff repeats, reiterates and realleges each and every allegation of the Complaint designated "1" through "67" as though fully set forth at length herein.

69. Pursuant to the terms of the Scottsdale CGL Policy, Scottsdale is required to cover the State as an additional insured on a primary and noncontributory basis for defense and indemnity costs caused in whole or in part by H&L's work or activities under the Contract.

70. Pursuant to the terms of the Scottsdale Excess Policy, Scottsdale is required to cover the State as an additional insured on a primary and noncontributory basis for defense and indemnity costs caused in whole or in part by H&L's work or activities under the Contract, upon the exhaustion of the Scottsdale Primary Policy.

71. Scottsdale has acknowledged that the State qualifies as an additional insured.

72. Pursuant to Section 107-09(C) of the Contract, H&L promised to defend, indemnify and hold the State harmless against any and all claims for bodily injury that arose out of H&L's work under the Contract.

73. Pursuant to the Contract, H&L promised to defend the State from any suit alleging such bodily injury.

74. H&L's contractual obligations to defend, indemnify and hold the State harmless against any and all claims for bodily injury that arose out of H&L's work under the Contract are insured by the Scottsdale Policies.

75. The Scottsdale CGL Policy includes a Contractual Liability Exclusion that does not apply to an "insured contract" as defined by the Scottsdale CGL Policy.

76. The Scottsdale CGL Policy's definition of an "insured contract" includes: "That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability would be imposed by law in the absence of any contract or agreement."

77. The Contract qualifies as an "insured contract" under the Scottsdale CGL Policy.

78. The Scottsdale Excess Policy follows the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", which expressly includes the Scottsdale CGL Policy.

79. Based upon the allegations in the Underlying Court of Claims Actions and State Court Actions, and Scottsdale's acknowledgment that the State qualifies as a contractual additional insured, the State's liability arises out of H&L's work under the Contract.

80. The State qualifies as a contractual indemnitee of H&L and thus Scottsdale is obligated to provide a defense to the State in the Underlying Court of Claims Actions.

81. Scottsdale's obligations attach regardless of any other available insurance.

82. The State has complied with all terms, conditions, and prerequisites to coverage set forth in the Scottsdale CGL Policy and the Scottsdale Excess Policy and Scottsdale has waived all rights and coverage defenses under the Scottsdale CGL Policy and Scottsdale Excess Policy, at law and in equity.

83. Arch has provided and paid for the defense of the State in connection with the Underlying Court of Claims Actions up to the present time.

84. The State and Arch have demanded that Scottsdale provide and pay for the defense and indemnity of the State in connection with the Underlying Court of Claims Actions.

85. Scottsdale has refused to accept these obligations and Plaintiff continues to be damaged.

86. Scottsdale is obligated to provide insurance coverage in connection with H&L's contractual duty to defend the State in the Underlying Court of Claims Actions.

87. Scottsdale is obligated to provide contractual indemnification and/or additional insured coverage for defense to the State in connection with the Underlying Court of Claims Actions.

88. Scottsdale's obligations are primary to those of Arch or any other direct insurer of the State.

89. Plaintiff is entitled to a declaration that Scottsdale has an obligation to defend the State in connection with the Accident and/or the Underlying Court of Claims Actions.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Relief – Duty to Indemnify)

90. Arch repeats, reiterates and realleges each and every allegation of the Complaint designated "1" through "89" as though fully set forth at length herein.

91. Pursuant to the terms of the Scottsdale CGL Policy, Scottsdale is required to cover the State as an additional insured on a primary and noncontributory basis for defense and indemnity costs caused in whole or in part by H&L's work or activities under the Contract.

92. Pursuant to the terms of the Scottsdale Excess Policy, Scottsdale is required to cover the State as an additional insured on a primary and noncontributory basis for defense and indemnity costs caused in whole or in part by H&L's work or activities under the Contract, upon the exhaustion of the Scottsdale Primary Policy.

93. Scottsdale has acknowledged that the State qualifies as an additional insured.

94. Pursuant to Section 107-09(C) of the Contract, H&L promised to defend, indemnify and hold the State harmless against any and all claims for bodily injury that arose out of H&L's work under the Contract.

95. Pursuant to the Contract, H&L promised to indemnify and hold the State harmless from any suit alleging such bodily injury.

96. H&L's contractual obligations to defend, indemnify, and hold the State harmless against any and all claims for bodily injury that arose out of H&L's work under the Contract are insured by the Scottsdale Policies.

97. The Scottsdale CGL Policy includes a Contractual Liability Exclusion that does not apply to an "insured contract" as defined by the Scottsdale CGL Policy.

98. The Scottsdale CGL Policy's definition of an "insured contract" includes: "That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or

organization. Tort liability means a liability would be imposed by law in the absence of any contract or agreement."

99. The Contract qualifies as an "insured contract" under the Scottsdale CGL Policy.

100. The Scottsdale Excess Policy follows the same provisions, exclusions, and limitations that are contained in the applicable "controlling underlying insurance", which expressly includes the Scottsdale CGL Policy.

101. Based upon the allegations in the Underlying Court of Claims Actions and State Court Actions, and Scottsdale's acknowledgment that the State qualifies as a contractual additional insured, the State's liability arises out of H&L's work under the Contract.

102. The State qualifies as a contractual indemnitee of H&L, thus Scottsdale is obligated to indemnify the State in the Underlying Court of Claims Actions and State Court Actions.

103. Scottsdale's obligations attach regardless of any other available insurance.

104. The State has complied with all terms, conditions and prerequisites to coverage set forth in the Scottsdale CGL Policy and the Scottsdale Excess Policy and Scottsdale has waived all rights and coverage defenses under the Scottsdale CGL Policy and Scottsdale Excess Policy, at law and in equity.

105. The State and Arch have demanded that Scottsdale provide and pay for the indemnity of the State in connection with the Underlying Court of Claims Actions.

106. Scottsdale has refused to accept these obligations and Plaintiff continues to be damaged.

107. Scottsdale is obligated to provide insurance coverage in connection with H&L's contractual duty to indemnify and hold harmless the State in the Underlying Court of Claims Actions.

108. Scottsdale is obligated to provide contractual indemnitee and/or additional insured coverage for the indemnification of the State in connection with the Underlying Court of Claims Actions.

109. Scottsdale's obligations are primary to those of Arch or any other direct insurer of the State.

110. Plaintiff is entitled to a declaration that Scottsdale has an obligation to defend and indemnify the State to the extent of any settlement or judgment involving the State in connection with the Accident and/or the Underlying Court of Claims Actions.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Breach of Contract – Reimbursement)**

111. Arch repeats, reiterates and realleges each and every allegation of the Complaint designated "1" through "110" as though fully set forth at length herein.

112. Pursuant to the Scottsdale Policies, Scottsdale promised to defend and indemnify, i.e., pay those sums that the State and/or H&L became legally obligated to pay as damages, because of bodily injury caused by an occurrence during the Scottsdale Policies' policy period.

113. Pursuant to the Scottsdale Policies, Scottsdale promised to defend and indemnify the H&L and the State from any suit alleging such bodily injury.

114. Arch has provided and paid for the defense of the State in connection with the Underlying Court of Claims Actions up to the present time.

115. Plaintiff has demanded that Scottsdale pay for said defense costs.

116. To date, Scottsdale has failed and refused to pay for said defense costs.

117. Scottsdale has breached its contractual duty to defend the State.

118. Plaintiff continues to be damaged by this breach of contract.

18

119. Plaintiff is entitled to all defense and indemnity costs incurred, and to be incurred, in connection with the Accident and the Underlying Court of Claims Actions, together with statutory interest.

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

a. On the First Cause of Action, a declaration that Scottsdale is obligated to defend the State in connection with the Accident and the Underlying Court of Claims Actions on a primary and noncontributory basis, including but not limited to an immediate duty to defend, and all other benefits available pursuant to the terms of the Scottsdale Policies;

b. On the Second Cause of Action, a declaration that Scottsdale is obligated to indemnify the State for any judgment or settlement in connection with the Accident and the Underlying Court of Claims Actions on a primary and noncontributory basis, pursuant to the terms of the Scottsdale Policies;

c. On the Third Cause of Action, payment of all defense and indemnity costs incurred, or to be incurred, plus statutory pre- and post-judgment interest, due to Scottsdale's breach of its contractual obligations;

d. With respect to all Claims, an award to Plaintiff of attorneys' fees and costs and disbursements of this action to the extent provided by law, rule or statute, pre and post-judgment interest, and such other and further relief as seems just and proper to the Court.

CONNELL FOLEY LLP
*Attorneys for Plaintiff, Arch Insurance Company*

Dated: April 16, 2025       By: _____
William D. Deveau
185 Hudson Street, Suite 2510
Jersey City, NJ  07311
(201) 521-1000
WDeveau@connellfoley.com
*Attorneys for Plaintiff, Arch Insurance Company*

16555649-1