UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARCH INSURANCE COMPANY,
Plaintiff,

-against-

SCOTTSDALE INSURANCE COMPANY,
Defendant.

Case No. 1:25-cv-03133 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Arch Insurance Company ("Plaintiff" or "Arch") brings this action against Defendant Scottsdale Insurance Company ("Defendant" or "Scottsdale") for breach of contract and declaratory judgment under New York Civil Practice Law and Rules Section 3001, N.Y. C.P.L.R. § 3001 (McKinney 2009), based on Scottsdale's refusal to provide for Arch's defense and indemnity, *see generally* Dkt. 20 (the "First Amended Complaint" or "FAC"). Now before the Court is Defendant's motion to dismiss the First Amended Complaint in its entirety for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. 29. For the following reasons, the motion is DENIED.

## BACKGROUND

### I. Factual Background

The following facts are taken from the Amended Complaint and accepted as true for purposes of the motion to dismiss. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024).

#### A. The Contract Between the State and H&L

On October 8, 2014, the State of New York (the "State") and H&L Contracting LLC ("H&L") entered into a contract, Dkt. 20-1 (the "Contract"), whereby H&L would serve as the

general contractor in connection with various preventative maintenance bridge repairs in Brookhaven and Islip, New York. FAC ¶¶ 17, 24-26. The Contract is explicitly inclusive of the Department of Transportation ("DOT") Standard Specifications (the "Standard Specifications"). *Id.* ¶ 25; Contract at 4 ("The Contract . . . shall be deemed to include . . . the 'Standard Specifications[.]'"). The Standard Specifications required H&L, as a contractor, to procure and maintain commercial general liability insurance and umbrella or excess liability insurance, both with specific liability limits. FAC ¶¶ 18, 27; *see* Dkt. 20-2 ("Standard Specifications") at 20, 23-24. The Standard Specifications also required that the State be named as an additional insured under these insurance policies (the "H&L Additional Insured Provision"). FAC ¶ 28; Standard Specifications at 22. Specifically, the H&L Additional Insured Provision provides:

> All insurance policies required by these specifications, except workers' compensation and professional liability shall be endorsed to provide coverage to "The State of New York/New York State Department of Transportation, any municipality in which the work is being performed . . . and their agents or employees" with respect to any claim arising from the Contractor's [H&L] Work under this contract or as a result of the Contractor's [H&L] activities.

Standard Specifications at 22 (emphasis omitted).

Under the Standard Specifications, the insurance policies that H&L was required to procure must provide primary coverage over other insurance available to the State (the "Primary Coverage Provision"). FAC ¶ 30; Standard Specifications at 22. The Primary Coverage Provision provides: "All insurance policies, excepting workers' compensation, shall provide that the required coverage shall be primary as to any other insurance that may be available to the Department for any claim arising from the Contractor's Work under this contract, or as a result of the Contractor's activities." Standard Specifications at 22.

The Standard Specifications also required H&L to defend, indemnify, and hold the State harmless with regard to any lawsuits initiated against the State "arising from" H&L's work under

the Contract (the "Indemnification Provision"). FAC ¶¶ 31-32; Standard Specifications at 27-28. The Indemnification Provision provides:

> C. *Obligation to Indemnify by the Contractor*. To the fullest extent permitted by law, the Contractor shall indemnify and save harmless the State . . . from suits, claims, actions, damages and costs, of every name and description arising from the work under its contract during its prosecution and until the final acceptance thereof. . . . The State may retain such monies from the amount due the Contractor as may be necessary to satisfy any claim for damages recovered against the State . . . . The Contractor's obligation under this paragraph shall not be deemed waived by the failure of the State to retain the whole or any part of such monies due the Contractor, nor where such suit, action, damages and/or costs have not been resolved or determined prior to release of any monies to the Contractor under the contract, nor shall such obligation be deemed limited or discharged by the enumeration or procurement of any insurance for liability for damages imposed by law upon the Contractor, Subcontractor or the State[.]
>
> The Contractor has the obligation, at its own expense, for the defense of any action or proceeding which may be brought against the parties specified in paragraph §107-09 C. *Obligation to Indemnify by the Contractor*. This obligation shall include the cost of attorneys' fees, disbursements, costs and other expenses incurred in connection with such action or proceeding.
>
> Such obligation does not extend to those suits, actions, damages and costs of every name that arise out of the sole negligence of the State[.]

Standard Specifications at 27-28.

**B. The Scottsdale Policies**

H&L procured a commercial general liability policy, Dkt. 20-4 (the "Scottsdale CGL Policy"), and commercial excess liability policy, Dkt. 20-5 (the "Scottsdale Excess Policy" and, together with the Scottsdale CGL Policy, the "Scottsdale Policies"). FAC ¶¶ 40, 42. The Scottsdale Policies contain a number of provisions governing additional insureds and priority of coverage. One such provision in the Scottsdale CGL Policy is titled, "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement with You" (the "Scottsdale Additional Insured Provision"). FAC ¶ 46; Scottsdale CGL Policy at 45. The Scottsdale Additional Insured Provision states:

> [“]Who Is An Insured[”] is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for “bodily injury” . . . caused, in whole or in part, by: 1. [H&L’s] acts or omissions; or 2. The acts or omissions of those acting on [H&L’s] behalf; in the performance of [H&L’s] ongoing operations for the additional insured.

Scottsdale CGL Policy at 45; FAC ¶ 46. The Scottsdale CGL Policy has a similar provision for completed operations. *See* FAC ¶ 47; Scottsdale CGL Policy at 47. The Scottsdale Excess Policy also provides coverage for additional insureds, and any additional insured under the Scottsdale CGL Policy is automatically an additional insured under the Scottsdale Excess Policy. Scottsdale Excess Policy at 12; FAC ¶¶ 48-49.

The Scottsdale CGL Policy also contains a provision regarding primary and noncontributory other insurance (the “Scottsdale Other Insurance Provision”). Scottsdale CGL Policy at 44; FAC ¶ 50. The Scottsdale Other Insurance Provision provides:

> **Primary And Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under [H&L’s] policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** [H&L] ha[s] agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Scottsdale CGL Policy at 44.

The Scottsdale CGL Policy also contains provisions detailing the scope of its insurance coverage. With respect to coverage for bodily injury and property damage liability, the Scottsdale CGL Policy provides that Scottsdale:

> [W]ill pay those sums that the insured [H&L] becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. [Scottsdale] will have the right and duty to defend the insured [H&L] against any “suit” seeking those damages. However, [Scottsdale] will have no duty

> to defend the insured [H&L] against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*Id.* at 21. Certain events are explicitly excluded from coverage. *Id.* at 22. One such exclusion is for "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" (the "Contractual Liability Exclusion"). *Id.* However, this exclusion does not apply to liability for damages that are:

> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
>
> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*Id.*

Apart from these provisions, the Scottsdale CGL Policy provides for "Supplementary Payments" (the "Supplementary Payments Provision"), *id.* at 28-29, concerning coverage for bodily injury and property damage liability. *See id.* at 21. The Supplementary Payments Provision provides, in relevant part:

> 2. *If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit"*, we will defend that indemnitee if all of the following conditions are met:
>
> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";
>
> b. This insurance applies to such liability assumed by the insured;
>
> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";
>
> *d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;*

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

a. [Cooperate with investigation, settlement or defense of the suit; provide Scottsdale with copies of legal papers; notify other insurers available to indemnitee; coordinate other applicable insurance available to the indemnitee.]

(2) Provides us with written authorization to: [obtain records and information and conduct and control the defense of the indemnitee in the suit.]

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

*Id.* at 29 (emphasis added).

**C. The Arch Policy**

Prior to the State's Contract with H&L, Arch issued an owners and contractors protective liability policy to the State, which was effective from September 18, 2014 to September 18, 2016. FAC ¶ 35; Dkt. 20-3 (the "Arch Policy"). The Arch Policy includes a provision regarding Other Insurance (the "Arch Other Insurance Provision"), which provides:

> The insurance afforded by this policy is primary insurance and we will not seek contribution from any other insurance available to you except if the other insurance is provided by a contractor other than the designated "contractor" for the same operation and job location designated in the Declarations.
>
> If the other insurance is available, we will share with that other insurance by the method described below.

FAC ¶ 37; Arch Policy at 30.

**D. The Accident and Underlying Actions**

On August 21, 2016, while H&L's work under the Contract was ongoing, FAC ¶ 20, there was a multi-car accident (the "Accident") on the Long Island Expressway that resulted in several fatalities and a number of bodily injuries, *id.* ¶ 15. The Accident generated nine lawsuits

against the State in the New York Court of Claims, which all allege that the Accident occurred, at least in part, due to negligence in the performance and inspection of certain construction work at the site of the Accident (the "Underlying Court of Claims Actions"). *Id.* ¶ 19. Arch is defending the State in connection with the Underlying Court of Claims Actions, pursuant to the Arch Policy. *Id.* ¶¶ 21, 36. There are also a number of parallel actions arising from the Accident against H&L, as either a named defendant or a third-party defendant, in New York State Supreme Court (the "Supreme Court Actions"). *Id.* ¶¶ 77-78.

### E. Scottsdale's Refusal to Provide Coverage to the State

On August 30, 2016, the State tendered the Underlying Court of Claims Actions to Scottsdale for defense and indemnification. *Id.* ¶ 57. On or around October 21, 2016, Scottsdale disclaimed coverage under a reservation of rights pending further investigation of the Accident. *Id.* ¶ 58. On at least two occasions, in connection with the pending lawsuits, Scottsdale acknowledged that the State is an additional insured under H&L's Scottsdale Policies. *See id.* ¶¶ 59-62; Dkt. 20-6 ("Coverage Letter 1"); Dkt. 20-7 ("Coverage Letter 2").

## II. Procedural History

On April 16, 2025, Plaintiff initiated this action and filed its initial complaint. *See* Dkt. 1. Plaintiff amended its complaint on July 29, 2025. Dkt. 19; FAC.[1] On June 24, 2025, the Court extended Defendant's deadline to answer. Dkt. 15. Thereafter, the parties stipulated three times to extend Defendant's response deadline. *See* Dkt. 17 (extending until August 5, 2025); Dkt. 25 (extending until August 29, 2025); Dkt. 28 (extending until September 29, 2025). On September 29, 2025, Defendant filed its motion to dismiss the FAC. Dkt. 29; Dkt. 32 ("Br."). Thereafter, the parties sought six extensions to their motion to dismiss briefing schedule, which the Court

[1] Plaintiff filed its FAC twice. For purposes of this Opinion, the Court treats Dkt. 20 as the operative FAC.

granted. *See* Dkts. 37, 48, 52, 62, 66, 68. Plaintiff opposed the motion to dismiss on February 17, 2026, Dkt. 63 ("Opp."), and Defendant replied on April 14, 2026, Dkt. 69 ("Reply"). The motion is fully briefed.[2]

## LEGAL STANDARD

A plaintiff's complaint is subject to dismissal "to the extent that it 'fail[s] to state a claim upon which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)). However, the Court need not "accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## DISCUSSION

### I. Materials Properly Considered

On a Rule 12(b)(6) motion, a court is generally limited to the "facts stated on the face of the complaint," as well as "documents appended to the complaint or incorporated in the complaint by reference," "matters of which judicial notice may be taken," and documents

[2] Plaintiff added Defendant National Union Fire Insurance Company of Pittsburgh, P.A. ("NUFIC") through its FAC. *See generally* FAC. On January 13, 2026, Plaintiff voluntarily dismissed Defendant NUFIC. Dkt. 57.

"'integral' to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (first quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016); and then quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). "A document is 'integral' if the complaint 'relies heavily on its terms and effects.'" *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (quoting *Chambers*, 282 F.3d at 153). "Where a document is referenced in a complaint, 'the documents control and this Court need not accept as true the allegations in the . . . complaint.'" *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quoting *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)).

For purposes of this motion, the Court considers the documents appended to the First Amended Complaint, which include the Contract and relevant policies, because they are incorporated by reference and are central to Arch's claims for breach of contract and declaratory judgment.

## II. Declaratory Judgment Claims

Arch asserts two declaratory judgment claims. First, Arch argues that it is entitled to a declaration that Scottsdale has an obligation to defend the State in connection with the Accident and/or the Underlying Court of Claims Actions on a primary and noncontributory basis. FAC ¶¶ 106, 176(a). Second, Arch argues that it is entitled to a declaration that Scottsdale has an obligation to indemnify the State for any settlement or judgment involving the State in connection with the Accident and/or the Underlying Court of Claims Actions on a primary and noncontributory basis. *Id.* ¶¶ 147, 176(c).

Scottsdale moves to dismiss these claims, arguing first that Arch's coverage is primary over Scottsdale because the Contract between Arch and H&L did not provide for primary and noncontributory coverage. *See* Br. at 15-18. Second, Scottsdale contends that the

Supplementary Payments Provision bars coverage for the State because the State and H&L are not named in the same underlying actions and are in conflict with one another. *Id.* at 18-20.

For the reasons set forth below, the Court concludes that Arch has plausibly pled that Scottsdale has a duty to defend and indemnify the State as a contractual indemnitee of H&L.

### A. Legal Standard

"New York law treats an insurance policy as a contract and construes it in accordance with general contract principles." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.*, 265 F.3d 97, 103 (2d Cir. 2001)). "[I]nsurance policies, like other contracts, are to be construed so as to give effect to 'the intent of the parties as expressed by their words and purposes.'" *Nat'l Union Fire Ins. Co.*, 265 F.3d at 103 (quoting *In re Prudential Lines Inc.*, 158 F.3d 65, 77 (2d Cir. 1998)). "Unambiguous terms are to be given their plain and ordinary meaning." *In re Prudential Lines Inc.*, 158 F.3d at 77 (alteration adopted) (quotation marks and citation omitted). "The determination of whether an insurance policy is ambiguous is a matter of law for the court to decide." *Id.* (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998)).

### B. Scottsdale's Duty to Defend and Indemnify the State as a Contractual Indemnitee

Based on the plain language of the Contract, Plaintiff has plausibly pled that H&L owes the State both a duty to defend and a duty to indemnify. H&L agreed in the Contract to defend and indemnify the State from suits or claims "arising from" H&L's work under the Contract. Standard Specifications at 27. The broad plain language of the Contract's Indemnification Provision is clear that for "suits, claims, actions, damages and costs, of every name and description arising from the work under its contract during its prosecution and until the final

acceptance thereof," H&L is required to "indemnify and save harmless the State," and H&L "has the obligation, at its own expense, for the defense of any action or proceeding which may be brought against [the State]." *Id.* The Indemnification Provision cabins such coverage by providing that the obligation to defend "does not extend to those suits, actions, damages and costs of every name that arise out of the sole negligence of the State." *Id.* at 28. Giving these unambiguous terms their plain and ordinary meaning, *see In re Prudential Lines Inc.*, 158 F.3d at 77, the Contract "demonstrate[s] an 'unmistakable intent' to indemnify" the State, *Exxon Mobil Corp. v. Tredegar Corp.*, 891 F. Supp. 2d 559, 562 (S.D.N.Y. 2012) (quoting *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453, 456 (2d Cir. 1990)), for *any* action that may be brought against the State arising out of H&L's work under the Contract, so long as the action does not arise out of the sole negligence of the State. Arch has sufficiently alleged that at the time of the Accident, H&L's work under the Contract was ongoing and that the Underlying Court of Claims Actions allege that the Accident occurred, at least in part, due to negligence in the performance and inspection of certain construction work at the site of the Accident. FAC ¶¶ 19-20. Indeed, a New York state court construing the same contractual provision between the State and H&L has held, on summary judgment, that H&L owed indemnification to the State, should liability be found. *See* Short Form Order at 5, *State of New York v. H&L Contracting, LLC*, No. 702326/2019 (N.Y. Sup. Ct. Sept. 20, 2024), NYSCEF Doc. 26; Opp. at 20-21. Thus, Arch has plausibly alleged that H&L has a duty to defend and indemnify the State for the Underlying Court of Claims Actions.[3]

---

[3] The Court is not holding that Defendant is definitively required to indemnify the State in the Underlying Court of Claims Actions. Indeed, as Plaintiff has pointed out, *see* Opp. at 25, 27-28, there are a number of circumstances where Defendant would not need to indemnify the State, including where the State is solely negligent, *see* Indemnification Provision at 28 (explicitly excluding from H&L's indemnification obligation "suits, actions, damages and costs of every name that arise out of the sole negligence of the State"), or where there is no liability found, *see*

Based on the plain language of the Scottsdale CGL Policy and its Contractual Liability Exclusion, Arch has also plausibly pleaded that the Scottsdale Policies provide coverage for H&L's contractual indemnification and defense obligations to the State. The Scottsdale CGL Policy contains a section on coverage for bodily injury and property damage liability. Scottsdale CGL Policy at 21. It provides that Scottsdale:

> [W]ill pay those sums that the insured [H&L] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Scottsdale] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Scottsdale] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

*Id.* Therefore, Scottsdale has a duty to defend H&L against any suit seeking damages for bodily injury or property damage to which the Scottsdale Policies apply.

The Contractual Liability Exclusion provision excludes certain events from coverage, including "'[b]odily injury' or 'property damage' for which the insured [H&L] is obligated to pay damages by reason of the assumption of liability in a contract or agreement." *Id.* at 22. However, this exclusion expressly "does *not* apply" to liability for damages that are "[a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." *Id.* (emphasis added). The carveout also provides that, "[s]olely for the purposes of liability assumed in an 'insured contract', reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of 'bodily injury' or 'property

---

*Vill. of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995) ("[W]here the policy includes an obligation to defend, if there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability." (citing *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 274-75 (N.Y. 1984))). Rather, the Court is holding that, at this stage, Plaintiff has stated a plausible claim for indemnification.

damage'" so long as liability to that party for, or for costs of, that party's defense has "been assumed in the same 'insured contract'" and the "attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged." *Id.* The Scottsdale CGL Policy defines an "insured contract" as:

> That part of any other contract or agreement pertaining to your business (*including an indemnification of a municipality in connection with work performed for a municipality*) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Id.* at 34 (emphasis added).

Accepting the material facts alleged as true and drawing all reasonable inferences in favor of Arch, the Contract between H&L and State qualifies as an "insured contract" under the Scottsdale CGL Policy. H&L and the State entered into the Contract in connection with H&L's work performed for the State, whereby H&L explicitly assumed an obligation to defend and indemnify the State for suits arising from the work under the Contract. Thereafter, the Accident occurred. The bodily injury and property damage from the Accident falls within the Contractual Liability Exclusion provision's carve back providing coverage. Thus, Arch has plausibly pled that Scottsdale owes the State a duty to defend and indemnify pursuant to the Scottsdale CGL Policy's coverage provisions.

### C. The Scottsdale Policies Provide Primary Coverage to the State

The Court does not agree with Defendant's argument that the Arch Policy is primary and the Scottsdale CGL Policy does not provide primary coverage for the State because Scottsdale only owes coverage to the State on a primary and noncontributory basis if both conditions of the Scottsdale Other Insurance Provision are met. Scottsdale CGL Policy at 44. This Scottsdale

GCL provision requires that the State (as an additional insured of H&L) be a Named Insured under the Arch Policy *and* that the State and H&L agreed in writing that the Scottsdale CGL Policy "would be primary and would not seek contribution from any other insurance available to" the State. Br. at 16 (citing Scottsdale CGL Policy at 44). The parties do not dispute that the State is a Named Insured under the Arch Policy. *See* Arch Policy at 2. And while "Scottsdale concedes that [the] State is named an additional insured on the Scottsdale CGL," therefore satisfying the first requirement of the provision, *id.*, it argues that the Contract between the State and H&L does not require the Scottsdale Policies be primary and noncontributory and thus the Arch Policy is the primary policy for Plaintiff, *see id.* at 16-17. The Court does not agree.

Notwithstanding the Arch Other Insurance Provision and the Scottsdale Other Insurance Provision, under New York law, "an indemnity agreement in the underlying trade contract between insureds governs over the terms of an insurance policy concerning priority of coverage." *Century Sur. Co. v. Metro. Transit Auth.*, No. 20-1474-cv, 2021 WL 4538633, at *3 (2d Cir. Oct. 5, 2021) (summary order); *see Indem. Ins. Co. of N. Am. v. St. Paul Mercury Ins. Co.*, 900 N.Y.S.2d 24, 28 (N.Y. App. Div. 2010) (holding that "priority of coverage is irrelevant" because underlying indemnity agreement passes liability through to insurer); *Arch Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 108 N.Y.S.3d 124, 125 (N.Y. App. Div. 2019) (holding that because entities "were entitled to contractual indemnification from [contractor] and a complete pass through of liability, the [insurance] umbrella policy issued to [contractor] must respond before the Arch primary policy issued to [entities]"); *see also AIU Ins. Co. v. Valley Forge Ins. Co.*, 758 N.Y.S.2d 16, 17-18 (N.Y. App. Div. 2003) (holding that insured entity "was entitled to full indemnification and a complete pass-through of liability, in the absence of any showing of any direct negligence on [entity]'s part, since [entity] was an additional named insured on the primary and excess policies" of the insurer); 4 Bruner & O'Connor on Constr. Law § 11:222

(2026) ("The majority of courts that have addressed this issue have determined that the parties' indemnity agreement governs over their respective policies' 'other insurance' clauses."); 15A Couch on Ins. § 219:1 (3d ed. 2026) ("[A] contract with an indemnification clause . . . may shift an entire loss to a particular insurer notwithstanding the existence of an 'other insurance' clause in its policy."); *cf. Mass. Bay Ins. Co. v. Seneca Ins. Co.*, 768 F. Supp. 3d 592, 606-08 (S.D.N.Y. 2025) (holding owner was entitled to indemnification "whether or not it qualifies as an 'additional insured'" because tenant, in underlying lease, "agreed to indemnify the '[o]wner' from any liability for negligence of [t]enant's 'contractors,'" and tenant's "contractor ha[d] been found to be negligent"); *State v. Iron Bridge Constructors, Inc.*, Index No. 620881/18, 2020 WL 13348871, at *1 (N.Y. Sup. Ct. Mar. 16, 2020) (rejecting argument that plaintiff's indemnification claim is precluded because plaintiff's owners and contractors protective liability policy contains clause providing that coverage under the policy would be primary and the insurer would not seek contribution from other available insurance) (citation omitted)). "[A]n indemnitor (and thus its insurer) bears full responsibility for covered indemnification payments, even if the indemnitee has other insurance covering the same loss." *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 482 (S.D.N.Y. 2014) (collecting cases). This holds true even where a determination of liability has not yet been made in an underlying action. *See id.* at 479 ("[A]lthough '[c]laims for indemnification do not generally ripen until a judgment in the underlying action is paid,' third-party indemnification claims may be brought 'before they are technically ripe, so that all parties may establish their rights and liabilities in one action.'" (second alteration in original) (quoting *Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995))); *see, e.g.*, *Indem. Ins. Co.*, 900 N.Y.S.2d at 27-28 (finding pass-through liability after settlement of underlying claim). Thus, the language of the Scottsdale Other Insurance Provision and the Arch Other Insurance Provision does not preclude primary coverage by Scottsdale.

In *Wallace*, for example, the court held that a party's duty to indemnify took precedence over the language in the insurance policy because the construction contract "specifically and unambiguously provides that [contractor's] indemnification obligation 'shall not be limited by the existence of any insurance policy procured or maintained by [the contractor].'" *Wallace*, 5 F. Supp. 3d at 482 (citation omitted). The *Wallace* court explained that accepting the limitation in the contractor's insurance policy would render the contractual indemnity language meaningless. *Id.* So too here, if the Court were to accept Scottsdale's argument. H&L has agreed to "indemnify and save harmless," as well as defend any action against, the State. Standard Specifications at 27. According to the Contract, the insurance policies that H&L was required to procure must provide primary coverage over other insurance available to the State, specifically stating that: "All insurance policies, excepting workers' compensation, shall provide that the required coverage shall be primary as to any other insurance that may be available to the Department for any claim arising from the Contractor's Work under this contract, or as a result of the Contractor's activities." *Id.* at 22; *see* FAC ¶ 30. Therefore, like the contract in *Wallace*, pursuant to the Indemnification Provision, H&L's obligation shall not "be deemed limited or discharged by the enumeration or procurement of any insurance for liability for damages imposed by law upon the Contractor, Subcontractor or the State." Standard Specifications at 27.[4]

---

[4] Defendant cites *AECOM USA, Inc. v. H&L Contracting, LLC*, Index No. 203500/2022 (N.Y. Sup. Ct. Mar. 26, 2024) for the proposition that a duty to defend arises out of an insurance policy and not a construction contract. Br. at 13; *see* Dkt. 32-7. However, this opinion was primarily about duplicative actions. *See* Dkt. 32-7 at 4-5. The Court is further not persuaded by this order given the aforementioned authority and that *AECOM* cites only to *Hanover Ins. Co. v. Catlin Specialty Ins. Co.*, 192 N.Y.S.3d 680 (N.Y. App. Div. 2023) and *Rodriguez v. Savoy Boro Park Assocs. Ltd. P'ship*, 759 N.Y.S.2d 107 (N.Y. App. Div. 2003), Dkt. 32-7 at 5, both of which are inapposite.

Thus, neither the Arch Other Insurance Provision the Scottsdale Other Insurance Provision precludes primary coverage by Scottsdale here.

### D. The Supplementary Payments Provision Does Not Bar Coverage

Defendant next argues that the Scottsdale CGL Policy does not provide coverage to a contractual indemnitee like the State under the Supplementary Payments Provision for two reasons. Br. at 18; Reply at 9. First, Defendant points to Section 2 of the Supplementary Payments provision that conditions coverage where Scottsdale "defend[s] an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit.'" Br. at 18-19 (quoting Scottsdale CGL Policy at 29). Because the claims against H&L are in New York State Supreme Court and the claims against the State are in the New York Court of Claims, Defendant maintains that the Supplementary Payments Provision is not triggered. *Id.* at 19. Second, Defendant argues that the State is in conflict with H&L in defending the underlying cases, such that condition (2)(d) of the Supplementary Payments Provision is not satisfied. *Id.* at 18-20; *see* Scottsdale CGL Policy at 29 (providing a condition for coverage that "[t]he allegations in the 'suit' and the information we know about the 'occurrence' are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee"). Because the State has asserted affirmative defenses in the Underlying Court of Claims Actions indicating that third parties are responsible for the accident, Defendant contends that "these third parties must include H&L," Br. at 20, and that in at least one action the State "points the finger at H&L, creating a conflict," Reply at 12; *see also* Br. at 20 ("State will undoubtedly endeavor to point the finger at H&L and other persons and entities to reduce its share of liability for causing the accident."). Therefore, Defendant contends, the Supplementary Payments Provision "is not triggered and Arch receives no contractual indemnitee coverage." Br. at 20. The Court does not agree with Defendant's argument.

Here, the Supplementary Payments Provision does not *require* that an insured and indemnitee of the insured be parties to the same suit for coverage to attach. This provision states, "*If* we defend an insured against a 'suit' and an indemnitee of the insured is also named as a party to the 'suit', we will defend that indemnitee if all of the following conditions are met[.]" Scottsdale CGL Policy at 29 (emphasis added). "If" is a condition precedent rather than a contractual obligation. *See Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (noting that "'linguistic conventions' of condition" include "'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to'" (quoting *Israel v. Chabra*, 537 F.3d 86, 93 (2d Cir. 2008), *certified question accepted*, 894 N.E.2d 649 (N.Y. 2008), and *certified question answered*, 906 N.E.2d 374 (N.Y. 2009))). Therefore, *if* the insured and the indemnitee are part of the same lawsuit, the Scottsdale CGL Policy sets forth a number of conditions, including that "[t]he allegations in the 'suit' and the information [Scottsdale] know[s] about the 'occurrence' are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee." Scottsdale CGL Policy at 29. Such a condition makes sense where an insured and indemnitee are parties in the same action; if Scottsdale is to defend both parties, their interests must be aligned. But Defendant has pointed to nothing in the Supplementary Payments Provision or elsewhere in the Scottsdale CGL Policy that requires that an insured and an indemnitee be in the same action to trigger general indemnity and defense coverage overall. Indeed, at oral argument, Defendant conceded that the Supplementary Payments Provision is not a bar to general coverage and instead addresses supplemental coverage that would be provided to H&L and their contractual indemnities and how Scottsdale allocates these defense costs. *See* Sept. 14, 2026 Tr. at 8:9-9:3 (stating that Supplementary Payments Provision "protects H&L from having to lose part of the policy limits by paying the state for their defense costs as a matter of contractual indemnity," "allows

Scottsdale to provide a unified defense when . . . appropriate," and is "not an exclusion to coverage at all."); *see also id.* at 7:16-8:1 (explaining that the Supplementary Payments Provision "is a separate supplemental coverage provided by the policy where a contractual indemnity is sued in the same case as the named insured" and agreeing that this scenario is "not the case here at all"). Thus, the Supplementary Payments Provision does not bar coverage of Scottsdale's obligation to defend and indemnify the State.

**III. Breach of Contract**

Finally, Defendant ostensibly moves to dismiss Plaintiff's breach of contract claim but does not present any separate arguments in favor of dismissal of this claim, other than the general contention that Defendant had no duty to provide a defense to the State under the terms of the Scottsdale Policies. *See* Br. at 1-2 (stating that "Arch's claims for declaratory relief for a duty to defend, duty to indemnify, and breach of contract fail as a matter of law pursuant to the plain and unambiguous language of Scottsdale's [CGL] Policy . . . , which was issued to H&L"); *id.* at 18 ("Scottsdale respectfully requests that the Court interpret the Scottsdale CGL Policy, through a plain reading of the policy provisions, to bar Arch's claims for defense costs, indemnity, and breach of contract, as, in complete contradiction to Arch's allegations, the plain language of the Arch [P]olicy provides for primary and noncontributory coverage on behalf of Arch in defending the Court of Claims Actions and the Supreme Court Actions."). Because Arch has plausibly pleaded a duty to defend and indemnify as a contractual indemnitee for the reasons set forth above, *see* Sections II.B and II.C, *supra*, the Court will not grant Defendant's motion to dismiss Arch's breach of contract claim.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 29. Defendant shall answer Plaintiff's Amended Complaint by September 29, 2026.

The parties shall appear for an initial pretrial conference on October 21, 2026, at 11:30 a.m. in Courtroom 20B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York, 10007. Per this Court's Individual Rule of Practice 2.D, the parties must file a joint letter and a proposed Civil Case Management Plan and Scheduling Order at least ten calendar days before the initial pretrial conference.

Dated: September 15, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge